**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| WILLIAM MASTON JR., | : | |
| Plaintiff, | : | |
| | | Case No. 3:10cv00104 |
| v. | : | |
| | | District Judge Timothy S. Black |
| MONTGOMERY COUNTY JAIL MEDICAL STAFF PERSONNEL, et al., | : | Magistrate Judge Sharon L. Ovington |
| | : | |
| Defendants. | : | |

**REPORT AND RECOMMENDATION**

**I.   INTRODUCTION**

Plaintiff, who is proceeding *pro se*, was incarcerated in the Montgomery County Jail on February 27, 2010, for a period of 11 days. (Doc. #4). Plaintiff states that he suffers from epilepsy and takes physician prescribed medication in order to prevent the occurrence of seizures. (*Id.*). Plaintiff alleges that on numerous occasions during his incarceration he informed medical staff working at the Montgomery County Jail of his medical condition and requested his prescription medication be provided. (*Id.*). Plaintiff states that his requests were ignored and as a result, on February 28, 2010, he suffered a "violent seizure" and was taken by ambulance to Grandview Hospital for treatment. (*Id.*). Subsequently, on March 22, 2010, Plaintiff filed his Complaint alleging medical staff and

deputy sheriffs at the Montgomery County Jail violated his civil rights protected by the Constitution pursuant to 42 U.S.C. § 1983. (Doc. #2 at 1).

Upon *sua sponte* review by this Court, Plaintiff was ordered to file an Amended Complaint, "identifying the person or persons who, he claims, violated his constitutional rights." (Doc. #3 at 3). Pursuant to this Order, Plaintiff filed its Amended Complaint on April 7, 2010, identifying Defendants as: "Male Nurse Joyce"; "Nurse Jackie"; "Supervising Deputy 2nd Shift 2-28-10"; and "Supervising Deputy 1st Shift 3-01-10."[1] (Doc. #4 at 2).

The case is presently before the Court upon Defendants Nurse Jackie and Nurse Joyce's ("Defendants") Motion to Dismiss (Doc. #9), Plaintiff's Response in Opposition to Defendants' Motion to Dismiss (Doc. #14), Defendants' Reply to Plaintiff's Response (Doc. #16), and the record as a whole.

## II.  PLAINTIFF'S COMPLAINT

Plaintiff, proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983 against Defendants for allegedly failing to provide him with the physician prescribed medication he takes to treat epilepsy and prevent seizures. (Doc. #4 at 3). According to Plaintiff, he was arrested on February 27, 2010, and processed into the Montgomery County Jail at approximately noon. (*Id.*). Plaintiff alleges that during processing he informed Nurse Joyce about his medical history and medications he takes to treat epilepsy. (*Id.*). Plaintiff

---

[1] "Male Nurse Joyce" and "Nurse Jackie" were later identified in Defendants' Motion to Dismiss as Zachary Joyce and Jacqueline Osborne, respectively. (Doc. #9 at 1).

further alleges he emphasized his immediate need to take his prescription medication and provided Nurse Joyce with his doctor's name and current pharmacy information. (*Id.*). Plaintiff contends he continually requested his medication from different medical staff and also informed Nurse Jackie about his current pharmacy information. (*Id.*).

Plaintiff states that on February 28, 2010, at approximately 10 a.m., "while housed in W-1-1" he had a "violent seizure due to no meds [being] administered to [him]." (*Id.*). Plaintiff states that as a result of his seizure, he "ran into a brick pillar head first, fell back[,] got up[,] and ran into 2 steel tables busting both of [his] knee caps." (*Id.*). Plaintiff alleges that he was taken to Grandview Hospital and subsequently returned to the Montgomery County Jail after receiving treatment for injuries sustained as a result of the seizure. (*Id.*). Plaintiff claims photographs of his injuries were taken by Montgomery County Jail staff upon his return from Grandview Hospital and that he was eventually released from incarceration on March 9th, 2010. (*Id.*).

Plaintiff seeks monetary damages for his "pain, suffering, and neglect of [his] rights as a citizen." Plaintiff also requests "some type of reprimand be handed down to the listed / guilty staff parties involved in this manner." (*Id.* at 4).

## III.  MOTION TO DISMISS

Defendants contend that Plaintiff's Amended Complaint must be dismissed under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), as well as Ohio Rule of Civil Procedure 10(D)(2).[2]

---

[2] Whether dismissal under Fed. R. Civ. P. 12(b)(1) or Ohio Rule of Civil Procedure 10(D)(2) is appropriate in this matter is discussed below.

(Doc. #9 at 1).

To determine whether a complaint states a claim upon which relief can be granted, the Court accepts the plaintiff's factual allegations as true and construes the complaint in the light most favorable to the plaintiff. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).

A complaint filed *pro se*, as in this case, should be liberally construed and held to less stringent standards than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 595, 30 L.Ed. 2d 652 (1972). Nonetheless, in order "to survive a motion to dismiss a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'formulaic recitation of a cause of action's elements.' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 1965, 167 L.Ed.2d 929 (2007)).

The measure of a Rule 12(b)(6) challenge – whether the Complaint raises a right to relief above the speculative level – "does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. National Collegiate Athletic Ass'n.*, 528 F.3d 426, 430 (6th Cir. 2008)(quoting in part *Twombly*, 127 S.Ct. At 1965). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft . Iqbal*, __ U.S. __ , 129 S.Ct.

1937, 1949, 173 L.Ed.2d 868 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Gunasekera*, 551 F.3d at 466 (quoting in part *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007))(quoting *Twombly*, 127 S.Ct. at 1964). Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, __ U.S. __, 129 S.Ct. at 1950. "Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument." *Skinner v. Switzer*, 562 U.S. ___, 179 L. Ed. 2d 233, 236 (2011).

**IV. ANALYSIS**

A. 42 U.S.C. § 1983 Claim

Defendants set forth numerous arguments upon which they request this Court to dismiss Plaintiff's Amended Complaint. Defendants argue, in part, that Plaintiff's

Amended Complaint should be dismissed because Plaintiff has not provided any "legal or factual basis for his claim under 42 U.S.C. § 1983." (Doc. #9 at 5). Defendants contend that Plaintiff "has made no allegation of deliberate indifference to his medical needs nor has he alleged that the deprivation of his medical needs was serious based on an objective standard." (*Id.*). According to Defendants, Plaintiff "also failed to allege that Defendants knew of and disregarded a substantial risk of serious harm to his health and safety." (*Id.*). Although Plaintiff is proceeding *pro se*, his Amended Complaint has nevertheless set forth sufficient factual details necessary to state a claim for relief under 42 U.S.C. § 1983 that is plausible on its face.

Plaintiff's claim under 42 U.S.C. § 1983 is ultimately based on protections provided in the Cruel and Unusual Punishment Clause of the Eighth Amendment. Although "cruel and unusual punishment" may be synonymous with thoughts of torture and other physically barbaric treatment, the Eighth Amendment also provides protection against "punishments which are incompatible with 'the evolving standards of decency that mark the progress of a maturing society,' or which 'involve the unnecessary and unwanton infliction of pain.'" *Estelle v. Gamble*, 429 U.S. 97, 102-3, 97 S. Ct. 285, 290, 50 L. Ed. 2d 251 (1976) (internal citations omitted). Accordingly, the government has an "obligation to provide medical care for those whom it is punishing by incarceration."*Id.* at 103.

Withholding emergency medical care from a prisoner who is suffering from a life-threatening injury or illness could understandably constitute cruel and unusual

6

punishment, but denying administration of physician prescribed medication may also "result in pain and suffering which no one suggests would serve any penological interests."*Id.* Nevertheless, negligence and medical malpractice are not equivalent to medical mistreatment when stating a claim under 42 U.S.C. § 1983. *Id.* at 106. "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."*Id.* As such, a Plaintiff must establish two factors to state a claim under 42 U.S.C. § 1983: (1) the alleged deprivation is, objectively, "sufficiently serious"**;** and (2) the prison official acted with "deliberate indifference" to inmate health or safety. *Id.*; *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977, 128 L. Ed. 2d 811 (1994).

     1. "Sufficiently Serious"

Whether the alleged deprivation suffered by an inmate is objectively, "sufficiently serious" requires that "the inmate . . . show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834, 114 S. Ct. at 1977. "A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore*, 390 F.3d 890 (citing *Friend v. Rees*, 779 F.2d 50, 1985 U.S. App. LEXIS 14024, *at* *9 (6th Cir. 1985).

In this case, Plaintiff's Amended Complaint states that he suffers from epilepsy and takes physician prescribed medication daily to prevent the occurrence of seizures. (Doc. #4 at 3). Plaintiff alleges that after being booked in the Montgomery County Jail at

7

approximately noon on February 27, 2010, he spoke with Nurse Joyce during processing and gave him a list of his medications, his doctor's name, as well as the name and location of his pharmacy. (*Id.*) Plaintiff alleges that he "put emphasis on [his] immediate need for the above meds. taken for epilepsy . . . [and] kept requesting [his] meds from different medical staff." (*Id.*) Plaintiff claims that in addition to informing Nurse Joyce about this information, that he "personally gave a nurse Jackie my pharmacist['s] [name] . . . [and] Nurse Jackie said, she would take care of it." (*Id.*) Plaintiff alleges this conversation took place at approximately 10:00 a.m. on February 28, 2010. (*Id.*) Plaintiff states that around "3 or 4 p.m. [on] 2/28/2010 [he] had a violent seizure due to no meds administered to [him]. . . [and he] ran into a brick pillar head first, fell back[,] got up[,] and ran into 2 steel tables busting both of [his] knee caps." (*Id.*) Plaintiff's knowledge of this incident is based on statements made by staff and other inmates to him upon his return from the hospital after being treated for the injuries he sustained during this seizure. (*Id.*)

As is clear from Plaintiff's Amended Complaint, Plaintiff alleges that he has been diagnosed with epilepsy and is currently taking physician prescribed medication to treat this disorder. As such, Plaintiff has set forth sufficient factual details necessary to plausibly satisfy the objective, "sufficiently serious" medical need factor. Whether Plaintiff alleged sufficient factual details necessary to state a claim for relief that is plausible under 42 U.S.C. § 1983, and can withstand dismissal under Fed. R. Civ. P. 12(b)(6), will now hinge upon the sufficiency of facts alleged by Plaintiff regarding

8

Defendants' "deliberate indifference" to his "sufficiently serious" need for medical care.

    2. Deliberate Indifference

In addition to the objective, "sufficiently serious" prong discussed above, an individual asserting a claim under 42 U.S.C. § 1983 must also set forth factual allegations sufficient to satisfy the subjective, "deliberate indifference" component. The subjective requirement "is meant to prevent the constitutionalization of medical malpractice claims . . ." *Comstock v. McCrary,* 273 F.3d 693, 703 (6th Cir. 2001). Accordingly, this factor requires demonstration that the prison official "subjectively perceived a risk of harm and then disregarded it." *Id.* In order to satisfy the "deliberate indifference" component, "an *Eighth Amendment* claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 842, 114 S. Ct. 1970, 1978, 128 L. Ed. 2d 811.

Determining whether a prison official had the requisite knowledge of a substantial risk of serious harm to a prisoner "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . and a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* Although obviousness is not conclusive, a prison official cannot "escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist." *Id.* at 843.

As previously discussed, Plaintiff has set forth numerous allegations that Defendants knew of the serious nature of his condition, the urgent need for him to obtain his physician prescribed medication, and the risks that were entailed if such medication was not provided. Plaintiff alleges that despite this knowledge, Defendants ignored the risk. Additionally, Plaintiff included nine pages of medical records with his Response to Defendants' Motion to Dismiss (Doc. #14) supporting his allegations that Defendants' failure to provide him with his physician prescribed medication was an exacerbating factor for his seizure on February 28, 2010. Accepting these allegations as true, and construing the complaint in the light most favorable to the Plaintiff, Plaintiff has set forth sufficient factual details to show it is plausible that Defendants acted with deliberate indifference.

In addition, even if it is true, as Defendants argue, that they could not have prescribed medication to Plaintiff or "had any duty to give him the medications,"(Doc. #9 at 5), it is still plausible Defendants acted with deliberate indifference by intentionally delaying or denying Plaintiff's access to a nurse or physician who was authorized to provide Plaintiff with his physician prescribed medication. *See Newsome v. Peterson*, 66 Fed. Appx. 550, 551 (6th Cir. 2003) (citing Estelle, 429 U.S. at 104-05, 97 S. Ct. at 291) ("deliberate indifference to serious medical needs of prisoners [can occur] . . . whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."). As such, Plaintiff has provided

10

sufficient factual detail necessary to state a claim for relief that is plausible under 42 U.S.C. § 1983.

B. State Medical Claims

Defendants contend that Plaintiff's claim should be dismissed for failing to include an "affidavit of merit," as required under Ohio Rule of Civil Procedure 10(D)(2). Ohio Rule of Civil Procedure 10(D)(2) requires an affidavit of merit to be included with any "complaint that contains a medical claim . . . as defined in section 2305.113 of the Revised Code . . ." Under Ohio law, "medical claims" generally refer to "[c]laims that arise out of the medical diagnosis, care, or treatment of any person. . ." *Ohio Rev. Code Ann. § 2305.113*. The Supreme Court of Ohio has held that failure to provide an affidavit of merit renders the complaint subject to dismissal for failure to state a claim upon which relief can be granted. *Fletcher v. Univs. Hosps. of Cleveland*, 897 N.E.2d 147, 172 (Ohio 2008).

To the extent Plaintiff's Amended Complaint alleges medical claims arising under Ohio law, Defendants' argument that Plaintiff's failure to attach the affidavit of merit requires dismissal is correct. *Weatherford v. Hamilton County Sheriff*, 2010 U.S. Dist. LEXIS 85799, * 7 (S.D. Ohio 2010) (Spiegel, D.J.). On the other hand, Ohio Rule of Civil Procedure 10(D)(2) has no application to Plaintiff's claim arising under 42 U.S.C. § 1983: Plaintiff's claim is based on alleged violations of the Eighth Amendment of the United States Constitution, 42 U.S.C. § 1983 has no requirement for an affidavit of merit, and the *Erie* doctrine is not implicated. *Id.* at *5-6 (citing *Erie v. Tompkins*, 304 U.S. 64,

11

78, 58 S. Ct. 817, 822, 82 L. Ed. 1188 (1938)) ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state.")

C. Acting Under Color of State Law

In order "[t]o state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 49, 108 S. Ct. 2250, 2255, 101 L. Ed. 2d 40 (1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981) (overruled in part on other grounds, *Daniels v. Williams*, 474 U.S. 327, 330-331 (1986)). Defendants argue that "Plaintiff has not alleged that Defendants were acting under color of state law at the time of the alleged deprivation." (Doc. #9 at 6). Defendants also contend "[t]he 'under color of state law' element of a § 1983 claim excludes from its reach merely private conduct, no matter how discriminatory or wrongful." (*Id*.).

Although Plaintiff's Amended Complaint does not expressly state in the handwritten "Statement of Claim" section that Defendants were acting "under color of state law," Plaintiff affirmatively marked the first box on the previous page in Section II, stating this case is "[a] civil rights lawsuit alleging that Defendant(s) acting under color of State law deprived you of a right secured by federal law or the Constitution." (Doc. #4 at 2). As this is clearly part of Plaintiff's Amended Complaint, Defendants' argument that Plaintiff did not allege "Defendants were acting under color of state law at the time of the

12

alleged deprivation" is without merit.

Defendants also argue that because "Defendants are not state employees, but rather are employed by a private entity which provides medical services at Montgomery County Jail . . . Defendants cannot deprive a citizen of his constitutional rights. *See, Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir. 2000)." (Doc. #9 at 6). Defendants' reliance on *Lansing*, however, is misplaced.

Although in *Lansing,* the United States Court of Appeals for the Sixth Circuit found the Defendant, "Memphis in May International Festival, Inc.," ("Memphis in May") not to be acting under color of state law when it removed the plaintiff, Kenneth D. Lansing, from an area of its festival, the facts presented in *Lansing* are entirely distinct from those at issue in this case. *See Lansing v. City of Memphis*, 202 F.3d 821, 834 (6th Cir. 2000). For example, while Memphis in May is a not-for-profit corporation run by volunteers, *Id*. at 825, Defendants in this case are alleged to be privately employed medical staff contracted by the state to work in a county jail. Furthermore, whereas Memphis in May's involvement with the government consisted primarily of its use of a public park and nearby streets to host its annual "Memphis in May" festival, *Id.* at 829, Defendants Nurse Jackie and Nurse Joyce are alleged in this case to have provided a service to inmates that is the exclusive responsibility of the government. (*See Estelle*, 429 U.S. at 103, 97 S. Ct. at 290) ("An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met.")

In a § 1983 action a defendant acts under color of state law when the "defendant

13

exercise[s] power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. at 49, 108 S. Ct. at 2255. Thus, while Defendants are correct that 42 U.S.C. § 1983 does not create a cause of action against a private actor, privately employed medical professionals working under state contract are not considered private actors. *Id.* at 56. Medical professionals may be legally employed by a private entity, but it is the individual's "function within the state system, not the precise terms of his employment, that determines whether his actions can fairly be attributed to the State." *Id*. "Thus, generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *Id*. at 50. Accordingly, "[c]ontracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights." *Id.* at 54. *See also*: *Street v. Corr. Corp. Of Am.*, 102 F3d 810 (6th Cir. 1996).

      Plaintiff alleges Defendants, while performing their duties as nurses in the Montgomery County Jail, caused him to suffer harm as a result of unjustifiably delaying administration of his physician prescribed medication. Accepting Plaintiff's allegations as true and construing Plaintiff's Amended Complaint in the light most favorable to him, Plaintiff has stated sufficient factual details necessary to show that it is plausible Defendants, as nurses working in the Montgomery County Jail, were acting under color of state law. *See Id*. at 49-50.

Accordingly, it is recommended that Defendants' Motion to Dismiss be granted in part and denied in part as described below.[3]

**IT IS THEREFORE RECOMMENDED THAT:**

1. Defendants Nurse Jackie and Nurse Joyce's Motion to Dismiss (Doc. #9) be DENIED as it relates to Plaintiff's federal claims but GRANTED as it relates to any state-law medical malpractice claims set forth by Plaintiff.

April 18, 2011

          s/Sharon L. Ovington
          Sharon L. Ovington
     United States Magistrate Judge

---

[3] Defendants also argued *arguendo* that any state law claim raised in Plaintiff's Amended Complaint should be dismissed under Fed. R. Civ. P. 12(b)(1) if Plaintiff's claim under 42 U.S.C. § 1983 is dismissed. Since Plaintiff's state law claims for medical malpractice are dismissed due to Plaintiff's failure to attach an affidavit of merit, as required under Ohio Rule of Civil Procedure 10(D)(2), this portion of Defendant's argument is moot and does not require evaluation.

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).